No. 18-1917

# In the United States Court of Appeals for the Sixth Circuit

SPEECH FIRST, INC.,
*Plaintiff-Appellant,*

v.

MARK SCHLISSEL, IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNIVERSITY OF MICHIGAN, *ET AL.*,
*Defendants-Appellees.*

ON APPEAL FROM U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN, CIVIL ACTION
NO. 4:18-CV-11451-LVP-EAS, HON. LINDA V. PARKER

**BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM
LAW INSTITUTE IN SUPPORT OF PLAINTIFF-APPELLANT
IN SUPPORT OF REVERSAL**

Lawrence J. Joseph
D.C. Bar No. 464777
1250 Connecticut Ave. NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 18-1917            Case Name: Speech First, Inc. v. Schlissel

Name of counsel: Lawrence J. Joseph

Pursuant to 6th Cir. R. 26.1, Immigration Law Reform Institute
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

    No.

---

CERTIFICATE OF SERVICE

I certify that on _____ November 20, 2018 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Lawrence J. Joseph

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# **TABLE OF CONTENTS**

Disclosure of Corporate Affiliations & Financial Interest ........................................i

Table of Contents ............................................................................... ii

Table of Authorities .......................................................................... iii

Identity, Interest and Authority to File ...................................................1

Statement of the Case...........................................................................2

Standard of Review................................................................................2

Argument.................................................................................................3

I.  Speech First is likely to prevail on the merits. ...............................3

    A.  The District Court has jurisdiction over Speech First's claims........................................................................................3

        1.  The University's unilateral changes to its speech restrictions do not moot Speech First's challenge. ....................4

        2.  Speech First has standing to challenge the BRT regime. ..........8

    B.  The University's restrictions of speech violate the First Amendment. ..............................................................................9

II.  The other preliminary-injunction criteria favor the entry of an injunction. ...........................................................................12

    A.  Speech First's members will suffer irreparable harm without an injunction...........................................................12

    B.  The balance of the equities favors Speech First................12

    C.  The public interest favors an injunction............................14

Conclusion ............................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Ammex, Inc. v. Cox*,
    351 F.3d 697 702 (6th Cir. 2003) .................................................................... 6-7

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002) ................................................................................. 10-11

*Bd. of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.*,
    482 U.S. 569 (1987) .......................................................................................10

*Bench Billboard Co. v. City of Cincinnati*,
    675 F.3d 974 (6th Cir. 2012) ........................................................................ 6-7

*Berger v. United States*,
    295 U.S. 78 (1935), *overruled on other grounds*,
    *Stirone v. United States*, 361 U.S. 212 (1960) .................................................7

*Brandywine, Inc. v. City of Richmond*,
    359 F.3d 830 (6th Cir. 2004) .....................................................................3, 8

*Bray v. Alexandria Women's Health Clinic*,
    506 U.S. 263 (1993) ......................................................................................13

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) ...................................................................3, 12

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..........................................................................................3

*City of Mesquite v. Aladdin's Castle*,
    455 U.S. 283 (1982) .............................................................................5, 7, 10

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ........................................................................................3

*DeBoer v. Snyder*,
    772 F.3d 388 (6th Cir. 2014), *rev'd sub nom.*
    *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) ................................................13

*Doe v. Univ. of Michigan*,
    721 F. Supp. 852 (E.D. Mich. 1989) ..............................................................4

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004) ..........................................................................................11

*Elrod v. Burns,*
    427 U.S. 347 (1976) ......................................................................12

*FEC v. Akins,*
    524 U.S. 11 (1998) ..........................................................................9

*Forsyth Cty. v. Nationalist Movement*,
    505 U.S. 123 (1992) ......................................................................11

*Gibson v. Fla. Legislative Investigation Comm.*,
    372 U.S. 539 (1963) ........................................................................9

*Golden Gate Rest. Ass'n v. City of San Francisco,*
    512 F.3d 1112 (9th Cir. 2008) .......................................................14

*Harris v. McRae,*
    448 U.S. 297 (1980) ......................................................................13

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
    500 U.S. 72 (1991) ..........................................................................9

*Ky. Ret. Sys. v. EEOC*,
    554 U.S. 135 (2008) ......................................................................13

*Ky. Right to Life v. Terry,*
    108 F.3d 637 (6th Cir. 1997) ...........................................................7

*Land v. Dollar,*
    330 U.S. 731 (1947) ...................................................................3, 5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................9

*Macy v. GC Servs. Ltd. P'ship,*
    897 F.3d 747 (6th Cir. 2018) ...........................................................3

*Mosley v. Hairston*,
    920 F.2d 409 (6th Cir. 1990) ........................................................6-7

*Pac. Nw. Newspaper Guild, Local 82 v. NLRB,*
    877 F.2d 998 (D.C. Cir. 1989) .....................................................4, 6

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) ......................................................................13

*Physicians Comm. for Responsible Med. v. EPA,*
    292 F.App'x 543 (9th Cir. 2008).......................................................9

*Ramaprakash v. FAA,*
    346 F.3d 1121 (D.C. Cir. 2003) ..................................................4, 6

*Rasul v. Myers*,
    563 F.3d 527 (D.C. Cir. 2009) ............................................................4

*Reno v. ACLU*,
    521 U.S. 844 (1997) ......................................................................11

*Schuette v. Coalition to Defend Affirmative Action*,
    134 S.Ct. 1623 (2014) ..................................................................13

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ..........................................................................3

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969) ......................................................................10

*United States v. W. T. Grant Co.*,
    345 U.S. 629 (1953) ....................................................................6, 8

*Washington v. Reno*,
    35 F.3d 1093 (6th Cir. 1994) .......................................................14

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ..............................................................2, 12, 14

## STATUTES

U.S. CONST. art. III...........................................................2, 3, 9, 14

U.S. CONST. amend. I................................................................ 5, 8-12

## RULES AND REGULATIONS

FED. R. APP. P. 29(a)(4)(E) ..........................................................1

## IDENTITY, INTEREST AND AUTHORITY TO FILE

*Amicus curiae* Immigration Law Reform Institute ("IRLI") files this brief with the written consent of the parties.[1] IRLI is a nonprofit 501(c)(3) public-interest law firm incorporated in the District of Columbia. IRLI is dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and legal permanent residents and to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus* briefs in many important immigration cases. For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's affiliate, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law. Relevantly to this case, many voices in the immigration debate resort immediately to making false allegations of bias or racism against anyone who dares to defend the Nation's right and the federal Government's duty to enforce immigration laws. IRLI therefore does not want such accusations to take on the force of law by triggering adverse government action against speakers, as contemplated in the speech policies challenged here. For these reasons, IRLI has direct interests in the issues in this case.

---

[1] Pursuant to FED. R. APP. P. 29(a)(4)(E), the undersigned counsel certifies that: counsel for *amicus* authored this brief in whole; no counsel for a party authored this brief in any respect; and no person or entity — other than *amicus*, its members, and its counsel — contributed monetarily to this brief's preparation or submission.

## STATEMENT OF THE CASE

Speech First, a national membership organization, has challenged the speech policies of the University of Michigan, a state university in Ann Arbor. Specifically, Speech First challenged the University's policies against bullying, harassment, and bias, all based on a listener's subjective sense of identity, and an investigative apparatus called a "Bias Response Team" or "BRT." After Speech First filed suit, the University withdrew relevant definitions of bias, harassment, and bullying from its website and, while defending the original standards, opposed Speech First's motion for a preliminary injunction as moot with respect to the withdrawn definitions and for lack of Article III standing with respect to the BRT-related claims, arguing that the BRTs merely investigate, without any enforcement authority. The District Court denied a preliminary injunction on the basis of the University's mootness and standing arguments, and this appeal followed.[2]

## STANDARD OF REVIEW

Plaintiffs seeking interim relief must establish that they likely will succeed on the merits and likely will suffer irreparable harm without relief, that the balance of equities favors them versus the defendants' harm from interim relief, and that the public interest favors interim relief. *Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008); *cf.*

---

[2]    The University has not yet answered or moved in response to the complaint, and the District Court has extended the time to do so until 21 days after this Court's resolution of this appeal. Minute Order dated (Aug. 21, 2018).

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Although the Court reviews factual issues under the abuse-of-discretion standard, it reviews legal conclusions *de novo*: "[A] court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). This Court reviews Article III justiciability issues like standing and mootness *de novo*. *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) (mootness); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 752 (6th Cir. 2018) (standing).

**ARGUMENT**

## I.   SPEECH FIRST IS LIKELY TO PREVAIL ON THE MERITS.

The first and most important criterion in preliminary-injunction cases is the plaintiff's likelihood of prevailing on the merits, *Winter*, 555 U.S. at 20, which includes a jurisdictional component: A plaintiff cannot prevail without jurisdiction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Although jurisdiction often is a threshold issue, *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 105 (1998), federal courts must resolve the jurisdictional and merits issues together when they "intertwine." *Land v. Dollar,* 330 U.S. 731, 735 (1947). In the case before this Court, the jurisdictional issues of standing and mootness merge with the merits issues of vagueness and the chilling of protected speech.

### A.   The District Court has jurisdiction over Speech First's claims.

The District Court found that the University's elimination of the objectionable

definitions of harassment and bullying rendered Speech First's challenge moot and that Speech First's claims against the BRT were insufficiently concrete because the BRT does not have enforcement authority. Both conclusions are flawed.

### 1.    The University's unilateral changes to its speech restrictions do not moot Speech First's challenge.

The University's claims of mootness present a "whack-a-mole" problem, *Rasul v. Myers*, 563 F.3d 527, 534 (D.C. Cir. 2009), whereby the University changes its policies after being sued, without admitting the unlawfulness of the initial policies, and asks the Court to dismiss the suit because its revised policies do not threaten the plaintiff. As Speech First shows, the University has attempted the same *legerdemain* previously. Opening Br. at 7. That evasion did not work the last time, *Doe v. Univ. of Michigan*, 721 F. Supp. 852 (E.D. Mich. 1989), and it should not work now.

In the context of chilled speech, the prospect of a biased tribunal operating with no fixed definition of the relevant terms — *i.e.*, bullying, harassment, and bias — is "impermissible '*ad hocery*'" that does not provide "a legal theory that permits [students] reasonably to 'predict' whether a particular practice will be lawful or not." *Pac. Nw. Newspaper Guild, Local 82 v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989); *Ramaprakash v. FAA*, 346 F.3d 1121, 1130 (D.C. Cir. 2003). Although the cited decisions from the D.C. Circuit found "*ad hocery*" to be impermissibly arbitrary in the context of agencies' following their own precedent, the principle is

even stronger in the First Amendment context: "It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289-90 (1982) (interior quotation marks omitted, emphasis in original). Thus, under *Land v. Dollar*, *supra*, the merits merge with jurisdiction. Moreover, although the District Court relied on a line of cases in which this Court sometimes gives "more solicitude" to governmental defendants, Slip Op. at 29, that solicitude is unwarranted here for three reasons.

First, and most importantly, the Supreme Court has announced the standard of review for mootness against public defendants without any such leniency:

> In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated. The city followed that course with respect to the age restriction, which was first reduced for Aladdin from 17 to 7 and then, in obvious response to the state court's judgment, the exemption was eliminated. There is no certainty that a similar course would not be pursued if its most recent amendment were effective to defeat federal jurisdiction. We therefore must confront the merits of the vagueness holding.

*Aladdin's Castle*, 455 U.S. at 289. Even against a city defendant, the Supreme Court applied its voluntary-cessation standards, with no "wiggle" room for governmental defendants. When faced with a split in authority between this Court's holdings and the Supreme Court's holdings, this Court must give way.

Second, in the instances where this Court has rejected the Supreme Court's

clear guidance and followed its own "solicitude" standard for governmental defendants, those governmental defendants acted with two important aspects of sovereignty that are absent here.

- Unlike the University's purported policy reversal here — which can be reversed with a few keystrokes on a website, Opening Br. at 16 — the governmental parties to which this Court has given solicitude acted with formal, *governmental* effect. *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (federal regulations promulgated); *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981-82 (6th Cir. 2012) (enacted ordinance); *Ammex, Inc. v. Cox*, 351 F.3d 697, 700 n.1, 702 (6th Cir. 2003) (withdrawal of "Notice of Intended Action" statutorily required 10 days before state action). Nothing similarly formal here has occurred, so the University could renew is withdrawn policies (*i.e.*, "return to [its] old ways," *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)) not only without renewed notice, but also through adjudicative "*ad hocery*" (*i.e.*, by applying the impermissible standards without pre-announcing them). *Pac. Nw. Newspaper Guild*, 877 F.2d at 1003; *Ramaprakash*, 346 F.3d at 1130.

- Unlike the University — represented by the Williams & Connolly firm — the governmental parties that this Court has given solicitude to were represented by *governmental* lawyers. *See Mosley*, 920 F.2d at 411 (Office of the U.S.

Attorney); *Bench Billboard*, 675 F.3d at 976 (city solicitor's office); *Ammex*, 351 F.3d at 700 (state attorney general). Such governmental counsel are "representative[s] not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest… is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935), *overruled on other grounds*, *Stirone v. United States*, 361 U.S. 212 (1960). Here, by contrast, the private attorneys representing the University have no duty of impartiality, but rather a duty of zealous advocacy. Thus, even if this Court may extend deference to the litigation positions of attorneys general and other governmental counsel, such deference would be misplaced here.

Even if the Supreme Court's mootness rulings such as *Aladdin's Castle* allowed this Court to extend heightened deference to governmental defendants, this Court should not extend that deference to the University here because of these two differences.[3]

Third, this Court's permissive standard for governmental parties extends only as far as the government's reversal appears genuine: "This Court has noted that … such self-correction provides a secure foundation for a dismissal based on mootness *so long as it appears genuine*." *Bench Billboard*, 675 F.3d at 981 (emphasis added).

---

[3]    *See also Ky. Right to Life v. Terry*, 108 F.3d 637, 644-45 (6th Cir. 1997) (state attorney general argued mootness on the basis of a statutory amendment).

By continuing to defend its initial policies, the University essentially waives the argument that its voluntary adoption of its current policies moots Speech First's challenge to the University's speech restrictions. *W. T. Grant*, 345 U.S. at 633-34. Several "persuasive" indicia of non-mootness are present here: The University's continuation of its policies until after Speech First sued, and the University's "express refusal to concede that the [challenged policies] were illegal under the statute and [its] failure to promise not to commit similar violations in the future." *Id.*[4] In short, the University's withdrawal seems tactical, rather than genuine.

In the District Court, Speech First challenged, and the University defended, both the University's original and modified positions. If the University agrees in this Court that its original position violated the First Amendment, this Court could enjoin the original position if it accepts the University's argument about the new position. If the University does not accept that Solomonic offer, the Court can rest assured that the University's change in position is tactical and does not moot anything.

### 2.    Speech First has standing to challenge the BRT regime.

Speech First credibly bases its standing to challenge the BRTs on the chill on protected speech arising from their power not only to involve other campus

---

[4]     In *W. T. Grant*, the Court's review of the issue was deferential to the trial court, *id.*, but here this Court reviews the mootness issue *de novo*. *Brandywine*, 359 F.3d at 836.

authorities and teachers but also to create reports. *See* Opening Br. at 32-46. While *amicus* IRLI accepts all of Speech First's arguments as ample answer to the claim that the BRTs lack any actual enforcement authority, Slip Op. at 20, it also seems that Speech First could press procedural-rights standing under the Due Process Clause (*e.g.*, to avoid either having a particular administrative venue investigate its members or having its members investigated *at all*). *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) (recognizing parties' loss of "forum of their choice" as an injury in fact); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963) (due-process right to avoid investigation when state investigator lacks a nexus or "substantial relation between the information sought and a subject of overriding and compelling state interest"). Moreover, procedural standing relaxes Article III limits on redressability and immediacy. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571-72 & n.7 (1992); *FEC v. Akins,* 524 U.S. 11, 25 (1998). Insofar as Speech First does not press procedural standing, the Court need not reach it. *Physicians Comm. for Responsible Med. v. EPA*, 292 F.App'x 543, 545 n.1 (9th Cir. 2008) ("[b]ecause Appellants failed to raise the informational standing argument advanced by [*amicus curiae*], we decline to reach it").

### B.    The University's restrictions of speech violate the First Amendment.

If this Court reaches the merits, the University has largely conceded them. Simply put, schools do not have authority to regulate protected speech:

> In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are "persons" under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State. In our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate. They may not be confined to the expression of those sentiments that are officially approved. In the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views.

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). Indeed, these protections apply with even greater force at the university level.

The overbreadth doctrine — which allows Speech First to challenge the University's policies based on their effects on the rights of third parties — exists to prevent discouragement or "chilling" of speech and other activity protected by the First Amendment. *Bd. of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575-76 (1987). Although the University's tactical retreat on the operative definitions of the relevant misconduct (*e.g.*, bias, harassment, and bullying) does not so muddy the waters that this Court lacks jurisdiction, *see* Section I.A.1, *supra*, the resulting ambiguity does clarify the merits case for an injunction: "It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined." *Aladdin's Castle*, 455 U.S. at 289-90 (interior quotation marks omitted, emphasis in original); *accord Ashcroft v.*

*Free Speech Coalition*, 535 U.S. 234, 244 (2002). Speech First credibly alleges that the University's speech regime chills protected speech on a wide variety of controversial topics that intersect with identity politics (*e.g.*, immigration, abortion, same-sex marriage, religious freedoms). Those who hold views common in Michigan but atypical in Ann Arbor should not have to censor themselves to obtain a public education.

Moreover, the First Amendment does not give the University authority to restrict protected speech to avoid offending other students:

> Listeners' reaction to speech is not a content-neutral basis for regulation. Speech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob.

*Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992). Neither this Court nor the University can give a "heckler's veto" to those subjectively offended by protected speech. *Reno v. ACLU*, 521 U.S. 844, 880 (1997); *cf. Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 34-35 (2004) ("adopting a subjective approach would reduce the [endorsement] test to an absurdity" due to "the dizzying religious heterogeneity of our Nation") (O'Connor, J., concurring). Thus, the University's use of subjective criteria to evaluate "bias" is itself biased. Indeed, the University's policies arguably violate themselves in that the policies attack holders of perceived privilege (*e.g.*, Caucasians, males, heterosexuals, conservatives, etc.). No university should put its thumb so crudely on the scale of acceptable thought or speech.

11

## II.    THE OTHER PRELIMINARY-INJUNCTION CRITERIA FAVOR THE ENTRY OF AN INJUNCTION.

The remaining preliminary-injunction criteria under *Winter* are either conceded or flow readily from the merits discussion in Section I, *supra*. In any event, as set out below, these criteria all warrant issuing a preliminary injunction.

### A.    <u>Speech First's members will suffer irreparable harm without an injunction.</u>

If Speech First survives the University's procedural gambit of seeking to moot this case or hiding behind standing, it is clear that Speech First satisfied the second *Winter* criterion: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). The University cannot argue otherwise.

### B.    <u>The balance of the equities favors Speech First.</u>

The third preliminary-injunction criterion is the balance of the equities, *Winter*, 555 U.S. at 20, or — as this Court has framed it — "whether issuance of the injunction would cause substantial harm to others." *Certified Restoration Dry Cleaning*, 511 F.3d at 542 (internal quotation marks omitted). However defined, the University does not have any genuine interests in enforcing its overbroad speech restrictions.

At the outset, topics that might typically offend a listener often are simply not well understood by the lay public. For example, opposing illegal immigration is often deemed racist or ethnically discriminatory, presumably because many illegal

aliens are Hispanic, but that *correlation* does not show causation. *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 141 (2008). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences;" it means that the speaker "selected or reaffirmed a particular [statement] at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Also, though only women can become pregnant, opposing abortion is simply not discrimination based on sex, and thus opposing abortion is not sexist. *Harris v. McRae,* 448 U.S. 297, 322 (1980); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 271 (1993). And, of course, opposing same-sex marriage, especially if sought by judicial fiat — as this Court did in *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), *rev'd sub nom. Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) — does not equate to homophobia.

As the Supreme Court explained in reversing another decision of this Court, "Our constitutional system embraces ... the right of citizens to debate so they can learn and decide and then, through the political process, act in concert to try to shape the course of their own times." *Schuette v. Coalition to Defend Affirmative Action,* 134 S.Ct. 1623, 1636-37 (2014). In seeking to defend a regime in which, based on subjective policy views, authorities can stifle such debate by deeming constitutionally protected speech impermissible "bias" or worse, the University

finds itself with no equity to balance against Speech First's protected speech.[5]

### C. The public interest favors an injunction.

The fourth preliminary-injunction criterion is the public interest. *Winter*, 555 U.S. at 20. In litigation such as this, where the parties dispute the lawfulness of government programs, this last criterion collapses into the merits because there is a "greater public interest in having governmental agencies abide by the federal laws that govern their… operations." *Washington v. Reno,* 35 F.3d 1093, 1103 (6th Cir. 1994); *accord Golden Gate Rest. Ass'n v. City of San Francisco,* 512 F.3d 1112, 1126-27 (9th Cir. 2008). Speech First has made the better merits showing, and the University's attempt to hide behind Article III and changed policies concedes as much.

To the extent that the fourth *Winter* criterion considers third-party students' rights as distinct from the interests of the University, those rights, too, weigh in favor an injunction for the same reason that the balance of equities tips to Speech First. *See* Section II.B, *supra*. The public interest resides in an educational system that challenges the Nation's youth — including the students that the University seeks to shield from challenging views — and abhors a system that would squelch the free

---

[5]    With instances of genuinely discriminatory action, courts and administrative procedures exist to sanction unprotected speech or actions. Consequently, this Court would not disturb the intra-party equities by enjoining the challenged speech restrictions here.

expression of ideas.

## **<u>CONCLUSION</u>**

This Court should reverse the District Court's decision and remand with instructions to enter a preliminary injunction.

Dated: November 20, 2018                    Respectfully submitted,

    /s/ Lawrence J. Joseph
Lawrence J. Joseph
D.C. Bar #464777
1250 Connecticut Ave. NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Immigration Law Reform Institute*

## **CERTIFICATE OF COMPLIANCE**

1.      The foregoing brief complies with FED. R. APP. P. 32(a)(7)(B)'s type-volume limitation because the brief contains 3,455 words and fifteen pages, excluding the parts of the brief that FED. R. APP. P. 32(a)(7)(B)(iii) exempts.

2.      The foregoing complies with FED. R. APP. P. 32(a)(5)'s type-face requirements and FED. R. APP. P. 32(a)(6)'s type style requirements because the brief has been prepared in a proportionally spaced type-face using Microsoft Word 2010 in Times New Roman 14-point font.

Dated: November 20, 2018          Respectfully submitted,

/s/ Lawrence J. Joseph

Lawrence J. Joseph
D.C. Bar #464777
1250 Connecticut Ave. NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Immigration Law Reform Institute*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2018, I electronically filed the foregoing brief with the Clerk of the Court for transmittal of a Notice of Electronic Filing to the participants in this appeal who are registered CM/ECF users.

/s/ Lawrence J. Joseph

Lawrence J. Joseph, D.C. Bar #464777
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com